Scott C. Borison (CA Bar No. 289456)
**BORISON FIRM, LLC**
1900 S Norfolk St Ste 350
San Mateo CA 94403
T: (301) 620-1016
F: (301) 620-1018
scott@borisonfirm.com

Attorneys for Plaintiff and the Proposed Class

[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Elaine Saldivar, individually and on behalf of all others similarly situated, | Case No. 21- 4162 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Nestlé USA, Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiff, by attorneys, alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.     Nestlé USA, Inc. ("defendant"), manufactures, distributes, markets, labels and sells dairy coffee creamer under its Coffee-mate, Natural Bliss brand, purporting to be "natural" and flavored mostly or exclusively by natural vanilla ("Product").

2.     The relevant front label representations include (1) pictures of two vanilla beans and a vanilla flower, (2) "Vanilla – Natural Flavor," (3) "Natural Bliss," (4) "All-Natural [Coffee Creamer]," (5) "All Natural," (6) "Made With Real Milk & Cream," and (7) "No GMO Ingredients."



1    3.    The back panel shows a pitcher of cream, bottle of milk, spoonful of sugar, two

2    vanilla beans and a vanilla flower, with the statement, "Made with only: Milk & Cream, Cane Sugar,

3    [and] Natural Vanilla Flavor."



4.    The back panel further states, "OUR NATURAL *VANILLA* FLAVOR INCLUDES

EXTRACTS FROM REAL BEANS FROM MADAGASCAR."



**CLASS ACTION COMPLAINT**

I.    **NATURAL VANILLA FLAVOR**

5.    Natural vanilla flavor starts with the vanilla orchid, grown in tropical climates such as Madagascar.



6.    The vanilla flower produces green vanilla beans.



7.    The beans develop their unique flavor from being cured in the tropical sun.



4

8.      The flavoring principles of vanilla beans are removed through immersion in alcohol.

| Beginning | Middle | End |



9.      The color of the alcohol gradually changes to reflect the release of the millions of black seeds inside the vanilla beans, which contain the flavoring compounds.



10.     While vanillin (3-methoxy-4-hydroxybenzaldehyde) is the major component of natural vanilla, it only contributes about one-third of its flavor and aroma.

11.     The bulk of vanilla's flavor is from more than two hundred odor-active compounds, including acids, ethers, alcohols, acetals, heterocyclics, phenolics, esters and carbonyls.

12.     These non-vanillin compounds are essential to what consumers expect from natural vanilla.

13.     Methyl cinnamate and cinnamyl alcohol provide a cinnamon and creamy note.

14.     Acetovanillone provides a sweet, honey taste.

15.     P-hydroxybenzoic acid and vanillic acid are significant phenolic compounds which contribute to vanilla's aroma.

16.     4-methoxybenzaldehyde (p-anisaldehyde) and 4-methoxybenzyl alcohol (p-anisyl alcohol) provide creamy and floral notes.

## II.     CONSUMERS SEEK NATURAL INGREDIENTS

17.     The chemical production of vanillin in the late 19th century resulted in foods purporting to contain natural vanilla, but that contained no vanilla or a trace amount, boosted by low cost, synthetic vanillin.

18.     Demand for natural vanilla has been steadily increasing due to consumer demand for natural ingredients.

19.     Seventy percent of consumers avoid artificial flavors, made through harsh processing and synthetic ingredients, because they are linked to detrimental health and environmental effects.

20.     Consumers are accustomed to truthful labeling across to tell them whether a product's vanilla taste is from natural vanilla beans or is artificial.

21.     California's Sherman Law and the Food and Drug Administration ("FDA") have identical requirements for disclosing whether a product's taste is from the vanilla plant or from non-vanilla, synthetic sources. *See* 21 C.F.R. § 101.22(i).

**CLASS ACTION COMPLAINT**

22.     For example, other "vanilla" coffee creamers with pictures of natural vanilla beans and flowers truthfully disclose they are "Artificially Flavored."[1] See 21 C.F.R. § 101.22(i)(2).



23.     Other foods, like Fox's u-bet syrup and wafers, tell consumers they may taste *like* vanilla, but disclose they are not flavored by natural vanilla, stating, "Artificially Flavored."

 

---

[1] "French Vanilla" is another term used to describe "Madagascar Vanilla," because this island was once a French colony.

**CLASS ACTION COMPLAINT**

24.     The artificially flavored vanilla coffee creamers cost no more than $2.49 per 16 OZ, a substantial amount less than defendant's Product, $3.79 per 16 OZ, even though both contain artificial vanilla flavoring and little, if any, natural vanilla.

## III.     THE "NATURAL VANILLA" REPRESENTATIONS ARE FALSE AND MISLEADING

25.     Consumers who view the front label will expect that the predominant or exclusive source of the Product's vanilla taste will be natural vanilla.

26.     This back label would confirm this, stating, "Made with only: Milk & Cream, Cane Sugar, [and] Natural Vanilla Flavor," with a pitcher of cream, bottle of milk, spoonful of sugar and two vanilla beans and a vanilla flower.



27.     Should consumers scrutinize the ingredient list, they will see only "Natural Flavor."



**INGREDIENTS:** NONFAT MILK, HEAVY CREAM, CANE SUGAR, <mark>NATURAL FLAVOR</mark>.

28.     Despite the promises that the Product contains natural vanilla and natural flavor, the Product contains no appreciable or detectable amount of natural vanilla, and is flavored almost exclusively by artificial flavor.

29.     That the "Natural Flavor" consists of little, if any "Extracts From Real Beans From Madagascar" or "Natural Vanilla Flavor," and is mainly artificial, is based on several facts.

30.     First, according to Scott Rankin, a professor of dairy foods at the University of Wisconsin-Madison, "the different wordings on the labels amount to an industry shorthand for specific kinds of natural or artificial flavorings."

31.     For instance, "Natural flavor…(with no mention of vanilla at all) indicates just a trace of natural vanilla (there's no required level) and other flavorings such as nutmeg that merely trigger an association" with vanilla.

32.     The back label tacitly concedes that the "NATURAL [VANILLA] FLAVOR *INCLUDES* EXTRACTS FROM REAL BEANS FROM MADAGASCAR," but fails to disclose this amount is de minimis or negligible. (emphasis added).



33.     While this information may be known to food labeling experts such as Dr. Rankin, it is not known to reasonable consumers, including Plaintiff.

34.     Consumers are not told that though the "Natural Flavor" may contain *some* natural vanilla, the vanilla taste is mostly from artificial flavor.

35.     Second, analytical testing of the Product in 2020 and 2021 confirmed that the Product's "vanilla" taste is not from natural vanilla but artificial flavor.

36.      In isolating key natural vanilla compounds, the amount of vanillin was disproportionately greater than if it was present only from "natural vanilla flavor" or "extracts from real beans from Madagascar."

37.     The vanillin was unaccompanied by expected amounts of key aromatic compounds – methyl cinnamate, cinnamyl alcohol, p-cresol, acetovanillone, p-hydroxybenzoic acid, vanillic acid, 4-methoxybenzaldehyde (p-anisaldehyde) and/or 4-methoxybenzyl alcohol (p-anisyl alcohol).

38.     The detection of guaiacol, at atypically elevated levels, not explained by relation to any other compounds, is an indication that this compound is the source of the "vanilla" taste.

39.     Guaiacol is an artificial source because it is a petrochemical precursor, obtained from synthetic benzene and propylene, whose industrial source is petroleum.[2]

40.     Guaiacol is the source of 85% of artificial vanillin.

41.     Guaiacol is converted to vanillin through chemical reactions, condensation with glyoxylic acid, decarboxylation and the use of chemical catalysts, including sodium hydroxide and sodium chloride.

42.     Vanillin made from guaiacol is an artificial flavor because it is from an artificial source and made through non-natural processes. *See* 21 C.F.R. § 101.22(a)(1).

43.     The ingredient list is misleading, because Defendant is required to identify this flavoring by its specific name, "vanillin" or "artificial flavor."

44.     The Product contains other artificial flavors, such as piperonal (heliotrope). *See* 21 C.F.R. § 172.515(b) ("Synthetic flavoring substances and adjuvants.").

45.     Piperonal is not found in vanilla and is used to contribute a "powdery" note.

46.     The piperonal used is from an artificial source, as it was detected at levels several times higher than if a natural source was used.

47.     Artificial piperonal is made from benzene, a byproduct of petroleum processing, and a highly toxic carcinogen that causes leukemia.

IV.     THE "NATURAL" REPRESENTATIONS ARE MISLEADING

48.     The front label emphasizes the Product's "natural" attributes through the statements, "Vanilla – Natural Flavor," "Natural Bliss," "All-Natural Coffee Creamer,"  and "All Natural" (the "Natural Representations").

---

[2] A.G. Huesgen, Analysis of natural and artificial vanilla preparations, Agilent Technologies, Inc.

**CLASS ACTION COMPLAINT**

49.     The Natural Representations appear four times on the front label, compared to what the Product is primarily used as – "coffee creamer" – which appears once.

50.     Consumers have become increasingly concerned about effects of synthetic and chemical ingredients in foods.[3]

51.     Consumers are willing to pay, and have paid, a premium for products branded "natural" over products that contain synthetic ingredients.

52.     In 2015, sales of natural products grew 9.5% to $180 billion.[4]

53.     Reasonable consumers, including Plaintiff and Class Members, value natural products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as natural.

54.     Federal agencies have warned companies that they must ensure that they can substantiate "natural" claims.

55.     Federal agencies have issued guidance on the term "natural" so that companies will not use this term to mislead consumers.

56.     The FDA defines "natural" to mean nothing artificial or synthetic has been included in or added to a food that is not expected.

57.     The Federal Trade Commission ("FTC") advises that companies must anticipate how reasonable consumers will understand the word "natural."

58.     If "reasonable consumers could interpret a natural claim as representing that a

---

[3] Julianna M. Butler & Christian A. Vossler, *What is an Unregulated and Potentially Misleading Label Worth? The case of "Natural"-Labelled Groceries*, Environmental & Resource Economics, Springer; European Association of Environmental and Resource Economists, vol. 70(2), pages 545-564 (2017). "Thus, one finding is that most people – 87% of our sample – do appear to attribute meaning to "natural" labelling. The vast majority of respondents stated a belief that "natural" signals no artificial flavors, colors and/or preservatives." *Id.*
[4] *Natural Products Industry Sales up 9.5% to $180bn Says NBJ*, FOOD NAVIGATOR, http://www.foodnavigator-usa.com/Markets/EXPO-WEST-trendspotting-organics-natural-claims/(page)/6 ; *see also* Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural" Products*, INVESTOPEDIA (February 22, 2017), http://www.investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp (Study by Kline Research indicated that in 2016, the personal care market reached 9% growth in the U.S. and 8% in the U.K. The trend-driven natural and organic personal care industry is on track to be worth $25.1 million by 2025).

11

product contains no artificial ingredients, then the marketer must be able to substantiate that fact."[5]

59.     Surveys show that "[e]ighty-six percent of consumers expect a 'natural' label to mean processed foods do not contain any artificial [or synthetic] ingredients."[6]

60.     Another recent study showed that, "The vast majority of respondents stated a belief that 'natural' signals no artificial flavors, colors and/or preservatives."[7]

61.     Surveys and other market research, including expert testimony, will demonstrate that use of the term "natural" to describe the Product is false and misleading.

62.     In the context of refrigerated coffee creamers, reasonable consumers will not expect artificial or synthetic ingredients.

63.     Consumers at the point-of-sale are unable to verify whether a product is natural.

64.     Consumers are not expected or required to scour the ingredient list on the back of the Product to confirm or debunk prominent front label claims.

65.     Even if a reasonable consumer did review the ingredient list, they would not know that the "Natural Flavor" includes artificial flavor from synthetic sources.

66.     Even if Defendant claims that its "natural vanilla flavor" contains vanillin from a non-synthetic, non-vanilla source, the labeling would still be misleading, because the only natural vanilla flavor – and natural vanillin – is from vanilla beans.

67.     In correspondence with vanilla suppliers, the FDA has emphasized that "'natural flavor' must not be used in such a way to imply that it is a 'natural vanilla flavor', because it is not derived from vanilla beans. *See* Letter from Margaret-Hanna Emerick, FDA, to Richard Brownell, February 25, 2016.

68.     According to the FDA, where a food's characterizing flavor is vanilla and "the flavoring was not derived from vanilla…[it] must be identified as 'artificially flavored.'" *Id.*

---

[5] 75 Fed. Reg. 63552, 63586 (Oct. 15, 2010).
[6] Urvashi Rangan, Comments of Consumers Union on Proposed Guides for Use of Environmental Marketing Claims, 16 C.F.R. Part 260, Notice of the Federal Trade Commission (2010) and on FTC website, Comment 58.
[7] Julianna M. Butler & Christian A. Vossler, *What is an Unregulated and Potentially Misleading Label Worth? The case of "Natural"-Labelled Groceries*, Environmental & Resource Economics, Springer; European Association of Environmental and Resource Economists, vol. 70(2), pages 545-564 (2017).

**CLASS ACTION COMPLAINT**

69.   By placing the term "Natural Flavor" directly below "Vanilla," consumers will expect most, or all the flavoring to be from the natural flavor of vanilla.

70.   The Natural Representations cause consumers to not expect added flavoring that purportedly provides a vanilla taste to be from non-vanilla sources.

71.   Although the flavoring used to simulate the Product's characterizing vanilla flavor is (1) not from vanilla beans, (2) from an artificial petrochemical source and (3) made through an artificial process, Defendant pretends otherwise, conflating the natural and artificial flavoring and deceiving consumers.

72.   Because the Product contains artificial flavor that "simulates, resembles or reinforces the characterizing flavor," the front label is required to state, "Artificially Flavored." 21 C.F.R. § 101.22(i)(2).

73.   Defendant fails to disclose the addition of synthetic flavoring ingredients.

74.   Defendant knows consumers will pay more for the Product because it contains pictures of vanilla, the Natural Representations and omits that it is artificially flavored.

75.   Truthful and non-misleading labeling would require the labeling to state, "Artificially Flavored," regardless of whether the added vanillin was from natural, non-vanillin sources or the artificial sources alleged here.

76.   The Product lacks an authentic vanilla taste because of the absence of the critical odor-active compounds in vanilla.

77.   The added vanillin (from an *artificial* source) gives the Product a "sweet, creamy" taste, which is distinct from the multifaceted taste of natural vanilla beans.

**V.   RELIANCE AND ECONOMIC INJURY**

78.   Plaintiff sought to purchase a product with a materially greater amount of extracts from vanilla beans than was present.

79.   Plaintiff sought to purchase a product with natural vanilla flavor, without synthetic ingredients and expected that most or all the flavor would be from natural vanilla.

80.   Plaintiff did not expect the Product's vanilla taste to be provided mostly, or all, by artificial flavoring from artificial sources.

81.   Plaintiff saw and relied on the label's advertising, which misleadingly reference only vanilla beans even though the Product contained a negligible amount of this ingredient.

82.   Plaintiff would not have purchased the Product if she knew the representations were false and misleading.

83.   The Product costs more than similar products without misleading representations and but for the misleading representations, would have cost less.

84.   Plaintiff paid more for the Product than she otherwise would have, and would only have been willing to pay less, or unwilling to purchase it at all, absent the misleading representations.

85.   As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $3.79 per 16 OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

### INTRADISTRICT ASSIGNMENT

86.   Pursuant to Civil Local Rule 3-2(c-d), a substantial part of the events giving rise to the claims arose in Contra Costa County, and this action should be assigned to the Oakland or San Francisco Division.

### PARTIES

87.   Plaintiff is a resident of El Sobrante, Contra Costa County, California.

88.   During the relevant statutes of limitations for each cause of action, including between February and March 2021, Plaintiff purchased the Product within this district for personal and household consumption and use, in reliance on the representations the Product was flavored mainly by extracts from vanilla beans and did not contain artificial, synthetic flavoring.

89.   Plaintiff purchased the Product at stores including Railey's, 3360 San Pablo Dam Rd, San Pablo, CA 94806.

90.   Plaintiff tries to consume natural foods made from natural ingredients, and avoid synthetic and artificial ingredients, as much as possible.

91.   Plaintiff expected that most or all the flavoring would be from natural vanilla and not be from synthetic ingredients, because that is what the label said and implied.

**CLASS ACTION COMPLAINT**

92.     Plaintiff expected more than a vanilla taste, but natural vanilla from vanilla beans.

93.     Plaintiff would buy the Product again if assured it was flavored mainly by natural vanilla instead of synthetic flavoring.

94.     Defendant Nestlé USA, Inc., is a Delaware corporation with a principal place of business in Arlington, Arlington County, Virginia.

95.     Defendant is the US-subsidiary of the largest food company in the world, Nestle, S.A., based in Switzerland.

96.     Defendant has a long and respected history in the production and sale of dairy products.

97.     The Nestlé company began by producing milk-based powders for infants in the middle of the nineteenth century.

98.     The Coffee-mate brand was established by Carnation in 1961 and was the first non-dairy "creamer."

99.     The Product is available to consumers from stores throughout California, including drug stores, grocery stores, big box stores, convenience stores, specialty grocery stores and online, in various sizes.

## JURISDICTION AND VENUE

100.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

101.    Plaintiff is a citizen of El Sobrante, Contra Costa County, California.

102.    Defendant is a Delaware corporation with a principal place of business in Arlington, Arlington County, Virginia and is a citizen of Virginia.

103.    Diversity exists because plaintiff and defendant are citizens of different states.

104.    Upon information and belief, sales of the Product and any available statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs and the number of putative class members is more than 100 persons.

**CLASS ACTION COMPLAINT**

105.    Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred here – the purchases of Plaintiff and her awareness of the representations and omissions identified here.

106.    This Court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within California.

## **CLASS ACTION ALLEGATIONS**

107.    Plaintiff brings this action pursuant to Fed. R. Civ. P. Rule 23(a), (b)(2) and (b)(3).

108.    Plaintiff seeks to represent all persons residing in California who purchased the Product for personal or household consumption and use since May 23, 2015 ("Class" or "the California Class").

109.    The Class consists of thousands of persons, and joinder is impracticable.

110.    Common questions of law or fact predominate and include whether defendant's representations and omissions were and are misleading and if plaintiff and class members are entitled to injunctive relief and damages.

111.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and omissions.

112.    Plaintiff is an adequate representative because her interests do not conflict with other members.

113.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

114.    A class action is superior to other available methods for adjudication of this controversy, since individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

115.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

116.    Plaintiff seeks certification of a class for injunctive relief under Rule 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to the Class.

**CLASS ACTION COMPLAINT**

117.    Plaintiff seeks certification of a class under Rule 23(b)(3) because common issues predominate over questions affecting individual members, a class is superior when considering the factors set forth in the Rule and Defendant has acted or refused to act on grounds that apply generally to the Class.

118.    Plaintiff anticipates that this Court can direct notice to the Class, by publication in major media outlets and the Internet.

**FIRST CLAIM**
**(CALIFORNIA CLASS)**
**(Violation of California Business & Professions Code §§ 17200 *et seq.* –**
**Unlawful Conduct Prong of the UCL)**

119.    Plaintiff incorporates all preceding paragraphs.

120.    California Business & Professions Code section 17200 ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice."

121.    Defendant's representations and omissions are "unlawful" because they violate the Federal Food, Drug, and Cosmetic Act ("FFDCA") and its implementing regulations, including:

1.  21 U.S.C. § 343, which deems food misbranded when the label contains a statement that is "false or misleading in any particular," with "misleading" defined to "take[] into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material";

2.  21 U.S.C. § 321(n), which states the nature of a false and misleading advertisement;

3.  21 C.F.R. § 101.18(b), which prohibits true statements about food ingredients and descriptions that are misleading in light of the presence of other ingredients;

4.  21 C.F.R. § 101.22, which provides requirements to truthfully identify and disclose the source of a food or beverage's characterizing flavor; and

5.  21 C.F.R. § 102.5, which prohibits misleading common or usual names.

122.    Defendant's conduct is "unlawful" because it violates the California False

17

**CLASS ACTION COMPLAINT**

Advertising Law ("FAL") and the Consumer Legal Remedies Act ("CLRA").

123.    Defendant's conduct violates the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code section 109875, et seq. ("Sherman Law"), including:

1. Section 110100 (adopting all FDA regulations as state regulations);

2. Section 110290 ("In determining whether the labeling or advertisement of a food … is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account.  The extent that the labeling or advertising fails to reveal facts concerning the food … or consequences of customary use of the food … shall also be considered.");

3. Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food…. An advertisement is false if it is false or misleading in any particular.");

4. Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food … that is falsely advertised.");

5. Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

6. Section 110400 ("It is unlawful for any person to receive in commerce any food … that is falsely advertised or to deliver or proffer for delivery any such food…."); and

7. Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.").

124.    Each of the challenged statements made and actions taken by Defendant violates the FFDCA, FAL, and Sherman Law, and therefore violates the "unlawful" prong of the UCL.

125.    Defendant leveraged its deception to induce Plaintiff and class members to purchase a product that was of lesser value and quality than advertised.

**CLASS ACTION COMPLAINT**

126.    Defendant's deceptive advertising caused Plaintiff and class members to suffer injury-in-fact and to lose money or property.

127.    Defendant's actions denied Plaintiff and class members the benefit of the bargain when they decided to purchase the Product instead of other products that are less expensive and contain virtually the same or immaterially different amounts of vanilla bean ingredients.

128.    Had Plaintiff and class members been aware of Defendant's false and misleading advertising, they would not have purchased the Product at all, or would have paid less than they did.

129.    In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

130.    Plaintiff seeks an order for the disgorgement and restitution of all monies from the sale of the Product that was unjustly acquired through such acts.

**SECOND CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Violation of California Business & Professions Code §§ 17200, *et seq.* –**
**Unfair and Fraudulent Conduct Prong of the UCL)**

131.    Plaintiff incorporates all preceding paragraphs.

132.    California Business & Professions Code section 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

133.    The false and misleading representations of the Product constitutes "unfair" business acts and practices because it is immoral, unscrupulous, and offends public policy.

134.    The gravity of the conduct outweighs any conceivable benefit.

135.    The representations and omissions constitute "fraudulent" business acts and practices because they are false and misleading to Plaintiff and class members.

136.    Defendant's representations and omissions are likely to deceive Plaintiff and Class Members about the absolute and relative amounts of vanilla and natural ingredients.

137.    Defendant knew or reasonably should have known that its statements and omissions concerning the Product were likely to deceive consumers.

**CLASS ACTION COMPLAINT**

138.    In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

139.    Plaintiff seeks an order for the disgorgement and restitution of all monies from the sale of the Product that was unjustly acquired through acts of unlawful, unfair and/or fraudulent competition.

**THIRD CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**(Violation of California Business & Professions Code §§ 17500, *et seq.* –**
**False and Misleading Advertising)**

140.    Plaintiff incorporates all preceding paragraphs.

141.    California False Advertising Law (Cal. Business & Professions Code sections 17500 and 17508) prohibits "mak[ing] any false or misleading advertising claim."

142.    Defendant makes "false [and] misleading advertising claim[s]," by deceiving consumers as to the absolute and relative amounts of vanilla and natural ingredients in the Product.

143.    In reliance on these false and misleading advertising claims, Plaintiff and class members purchased and consumed the Product without the knowledge it contained a de minimis amount of vanilla ingredients and a substantial amount of non-vanilla ingredients, from synthetic sources.

144.    Defendant knew or should have known that its representations and omissions were likely to deceive consumers.

145.    As a result, Plaintiff and class members are entitled to injunctive and equitable relief, restitution, and an seek an order for the disgorgement of the funds by which Defendant was unjustly enriched.

**FOURTH CLAIM**
**Unjust Enrichment**

146.    Plaintiff incorporates all preceding paragraphs.

147.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

**CLASS ACTION COMPLAINT**

**JURY DEMAND AND PRAYER FOR RELIEF**

Plaintiff demands a jury trial on all causes of action so triable.

WHEREFORE, Plaintiff, on behalf of herself and members of the proposed class, prays for judgment and relief on all of the legal claims as follows:

A.     Certification of the Class, certifying Plaintiff as representative of the Class, and designating Plaintiff's counsel as counsel for the Class;

B.     A declaration that Defendant has committed the violations alleged herein;

C.     For restitution and disgorgement pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq.*;

D.     For declaratory and injunctive relief pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq.* and 17500, *et seq.*;

E.     For punitive damages;

F.     For interest at the legal rate on the foregoing sums;

G.     For attorneys' fees;

H.     For costs of suit incurred; and

I.     For such further relief as this Court may deem just and proper.

Dated:   June 2, 2021

Respectfully submitted,

/s/ Scott C. Borison

Scott C. Borison (CA Bar No. 237708)
BORISON FIRM, LLC
1900 S Norfolk St Ste 350
San Mateo CA 94403
T: (301) 620-1016
F: (301) 620-1018
scott@borisonfirm.com

SHEEHAN & ASSOCIATES, P.C.
Spencer Sheehan*
60 Cuttermill Rd Ste 409
Great Neck, NY 11021
T: (516) 268-7080
F: (516) 234-7800
spencer@spencersheehan.com

**CLASS ACTION COMPLAINT**

*Pro Hac Vice* Application Forthcoming

**CLASS ACTION COMPLAINT**